Nadine M. ANDERSEN and Tony
Andersen, Petitioners.

v.

Stephen D. LINDENBAUM,
M.D., Respondent.

No. 05SC774.

Supreme Court of Colorado,
En Banc.

May 29, 2007.

As Modified on Denial of Rehearing
June 11 and June 25, 2007.

Alexander and Ricci, PC, Joseph M. Ricci, Colorado Springs, Colorado, Anne Whalen Gill, LLC, DiAnn Lindquist, Anne Whalen Gill, Castle Rock, Colorado, Attorneys for Petitioners.

Kennedy Childs & Fogg, PC, John R. Mann, Edward D. Bronfin, Denver, Colorado, Attorneys for Respondent.

Campbell, Latiolais & Ruebel, PC, Jeffrey C. Ruebel, Casey A. Quillen, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Snell & Wilmer, LLP, Lee Mickus, Denver, Colorado, Attorneys for Amicus Curiae Colorado Civil Justice League.

Justice COATS delivered the Opinion of the Court.

Nadine and Tony Andersen petitioned for review of the court of appeals' judgment in their medical malpractice action, affirming summary judgment for the defendant, Dr. Lindenbaum. *See Andersen v. Lindenbaum*, 131 P.3d 1154 (Colo.App.2005). The district court disregarded Ms. Andersen's contradictory affidavit as a sham and, relying instead on her earlier deposition testimony, found there to be no genuine dispute that she failed to bring her action within the statutory limitations period. Because Andersen's affidavit, however, plausibly explained that her deposition testimony was premised on a typographical error concerning the date she discovered the defendant's alleged negligence, the district court erred in refusing to consider it.

The judgment of the court of appeals is therefore reversed, and the case is remanded with directions to return it to the trial court for further proceedings consistent with this opinion.

## I.

On December 16, 2002, Nadine and Tony Andersen filed a complaint against Dr. Stephen Lindenbaum for medical malpractice, based on a lack of informed consent for treatment. They alleged that in 1995, Nadine sought treatment from Lindenbaum to correct the unequal lengths of her legs.

According to the complaint, Lindenbaum advised Andersen that shortening her healthy leg was the only surgical option. Andersen sought a second opinion from Dr. Carl Rasimas, who wrote to Lindenbaum, suggesting a procedure to lengthen Andersen's injured leg as an alternative to shortening her healthy leg. Andersen claimed that Lindenbaum never advised her of this option and proceeded with surgery to shorten her

healthy leg, which, she contended, caused medical complications and ultimately forced her to file a Social Security disability claim. Andersen also alleged in her complaint that she first became aware of the letter from Dr. Rasimas to Lindenbaum in January 2001, years after undergoing surgery, while compiling her medical records for her Social Security file.

Early in the case, the parties agreed to limit initial discovery to the timeliness of Andersen's lawsuit. During Andersen's deposition, Lindenbaum's counsel questioned her about a letter she had written to Dr. Rasimas on November 4, 2002, referencing her discovery of his letter to Lindenbaum. In that letter she had written,

> I have to tell you that I was incredibly shocked to see your letter dated April 17, 1995 in Lindenbaum's file in *January 2000*. That is the first time I saw your letter or even knew that there was an alternative way to resolve the leg discrepancy other than shortening my right leg.

(emphasis added). Without drawing Andersen's attention to the date of her discovery, Lindenbaum's counsel inquired whether the information in the letter was correct, and she responded that it was.

Lindenbaum moved for summary judgment, asserting that it was undisputed that the suit was untimely under section 13–80–108(1), C.R.S. (2000), which set a two-year statute of limitations. In support, he pointed to Andersen's admission during her deposition to having seen Dr. Rasimas' letter in January 2000—two years and eleven months before filing suit. In opposition, Andersen immediately filed an affidavit stating that the "January 2000" date in her letter to Dr. Rasimas was a typographical error, which should have read, "January 2001." She also offered a notice from the Social Security Administration, dated November 2000, to demonstrate that the Administration did not even begin compiling her records until then.

Nevertheless, the district court granted summary judgment in favor of Lindenbaum. Relying on case law from the Tenth Circuit Court of Appeals, *see Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986), the district court found Andersen's affidavit to be a sham, incapable of defeating a motion for summary judgment. The court of appeals affirmed, likewise relying on *Franks,* holding that Andersen's affidavit was inconsistent with her prior testimony and insufficient to defeat a motion for summary judgment. Andersen petitioned this court for a writ of certiorari.

## II.

Like its federal counterpart, C.R.C.P. 56(c) provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Roberts v. Am. Family Mut. Ins. Co.,* 144 P.3d 546, 548 (Colo.2006). In addition to concerning a material fact, the issue in dispute must be "genuine." To avoid summary judgment, the evidence presented in opposition to such a motion must therefore be sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Roberts,* 144 P.3d at 548.

At the summary judgment stage, the trial judge's function is not to weigh the evidence and decide what occurred, but to determine whether or not a genuine issue exists for the jury. *See Anderson,* 477 U.S at 249, 106 S.Ct. 2505; *see also Dominguez Reservoir Corp. v. Feil,* 854 P.2d 791, 795 (Colo.1993). "If the evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S at 249, 106 S.Ct. 2505 (internal citations omitted). Similarly, although it is not for the trial court to determine which evidence is the more

credible, if the evidence presented in opposition to summary judgment is so incredible that it could not be accepted as true by a reasonable jury, it cannot serve to create a "genuine" issue, or dispute, of fact. *See Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir.1997) (In considering evidence presented in opposition to a motion for summary judgment, "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it.").

In this regard, a relatively unique problem is presented when a party opposing summary judgment attempts to demonstrate a factual dispute by submitting an affidavit contradicting the affiant's own prior deposition testimony. Where the positions taken by the affiant are truly contradictory, he cannot be considered credible by a reasonable jury, in the absence of some plausible explanation why his earlier testimony was inaccurate. Many courts, including virtually all of the federal circuit courts of appeal, agree that where a party attempts to overcome a motion for summary judgment with an affidavit contradicting, but failing to offer a plausible explanation for, his own earlier deposition testimony, the court may treat that affidavit as failing to raise a genuine issue of fact and may grant the motion. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("[The lower courts] have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement."); *see also City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir.2006); *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir.2004); *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1086 (9th Cir.2002); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir.2000); *Palazzo & Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir.2000); *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4 (1st Cir.1994); *Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir.1993); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986); *Tippens v. Celotex Corp.*, 805 F.2d 949, 954–55 (11th Cir.1986); *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986); *Bar-wick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984).

While their analyses are not always uniform, these cases share a common goal in attempting to discover whether a party's subsequent affidavit is really contradictory of his earlier deposition testimony and, if so, whether the affiant's explanation could be considered credible by a reasonable jury. Courts have looked to such considerations as the specificity and clarity of the deposition question, *see generally Lane v. Celotex Corp.*, 782 F.2d 1526, 1533 (11th Cir.1986), the extent and specificity of cross-examination on the disputed point, *see generally Palazzo*, 232 F.3d at 43; *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364–65 (8th Cir. 1983), and any new or different information that was not available to the deponent at the time, all for the purpose of determining whether the deponent actually said what he meant and if so, whether he later learned facts justifying a change in his answer. *See generally Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir.2003); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir.1993); *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893–95 (5th Cir.1980).

■ Because of the vast array of possible explanations for an apparent contradiction, this determination cannot realistically be limited to any single factor or set of factors. Rather, it must include consideration of the totality of the circumstances surrounding both statements. *Cf. Franks*, 796 F.2d at 1237 (the factors relevant to determining whether the affidavit in that particular case was a sham *include* whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony, and whether the earlier testimony reflects confusion which the affidavit attempts to explain); *see also Burns*, 330 F.3d at 1282.

■ The plausibility of a party's explanation for contradicting prior deposition testimony goes directly to the genuineness of an asserted dispute of fact, and therefore to the question whether the non-moving party proposes to offer evidence from which a reasonable jury could resolve the dispute in his

favor. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Much like a ruling on a motion for judgment of acquittal, *see* Crim. P. Rule 29; *People v. Noga,* 196 Colo. 478, 480, 586 P.2d 1002, 1003 (1978), or a directed verdict, *see* C.R.C.P. 50; *Romero v. Denver & R.G.W. Ry. Co.,* 183 Colo. 32, 37, 514 P.2d 626, 628 (1973), a ruling on the genuineness of a factual dispute is clearly a matter of law. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Roberts,* 144 P.3d at 548. Any decision requiring an analysis of the totality of circumstances cannot (by definition) be reduced to a precise formula, but it is not, for that reason alone, rendered a matter within the discretion of the trial court. *Cf. People v. J.D.,* 989 P.2d 762, 765 (Colo.1999) (finding under a totality of the circumstances test, as a matter of law, the telephone interrogation of the juvenile defendant, initiated at the juvenile's request while detained in a juvenile facility, did not constitute a custodial interrogation); *People v. Naranjo,* 840 P.2d 319, 329 (Colo. 1992) (holding the totality of the circumstances indicated that, as a matter of law, the defendant did not voluntarily, knowingly and intentionally waive his right to testify); *Edmisten v. People,* 176 Colo. 262, 270–271, 490 P.2d 58, 62 (1971) ("The record, considered in its entirety, leads us to the conclusion that we cannot say, as a matter of law, that the 'totality of the circumstances' would render the line-up as tainted and constitute a deprivation of due process of law.").

■ Similarly, whether an affidavit may be rejected as a sham for purposes of a motion for summary judgment is not rendered discretionary simply because a precise formula cannot be devised to make that determination in every case. A party's affidavit directly contradicting his own earlier deposition testimony on an issue of material fact can be rejected as a sham affidavit only if it fails to include an explanation for the contradiction that could be found credible by a reasonable jury, and that determination, like the existence of a genuine issue of material fact itself, is a matter of law, to be reviewed de novo.

### III.

■ By understanding *Franks* as articulating a rigid three-factor test, rather than three considerations that were relevant to the plausibility of the non-moving party's explanation in that case, and by applying it in an overly mechanical fashion, the court of appeals was misled into finding Andersen's affidavit to be a sham. In fact, Andersen's claim of a typographical error, in conjunction with the failure of either direct or cross-examination to draw her attention to the critical date in her letter, amounted to an eminently plausible explanation.

During Andersen's deposition, Lindenbaum's counsel merely showed her the two-page letter she had written to Dr. Rasimas and asked whether all of the information it contained was accurate, to the best of her knowledge. Andersen responded affirmatively. No additional questions were asked of Andersen regarding this letter, and at no point did defense counsel ask Andersen specifically about the critical date. Being similarly unaware of the import of this question, Andersen's lawyer failed to elicit her disagreement with that date or explanation for it during cross-examination.

In fact, however, the January 2000 date cited by Lindenbaum as support for his motion for summary judgment directly contradicted the allegations in Andersen's pleadings, upon which her claim for relief was premised. She consistently maintained that she first saw the letter from Dr. Rasimas when she received a copy of the defendant's records as part of her Social Security file in *January 2000,* prompting her to write to Dr. Rasimas less than two years later in November 2002. After Lindenbaum filed his motion for summary judgment, Andersen quickly responded with an affidavit, explaining the date in her letter as a typographical error—an explanation entirely consistent with human behavior and with the facts she alleged in her original complaint. As support, Andersen attached to her affidavit opposing summary judgment a letter she received from the Social Security Administration, verifying a November 17, 2000 appointment in which she was to compile her Social Security file.

Because she was never specifically asked about the date, Andersen's affidavit was not directly contradictory of her prior deposition

testimony at all, and even if it were, her affidavit did not fail to provide a credible explanation for her earlier statement. To the contrary, it was perfectly understandable that one might make a single erroneous key strike while typing a letter and fail to proof-read carefully enough to catch it. The fact that a jury might ultimately choose not to credit that explanation cannot alter the fact that it creates a genuine issue of material fact to be resolved by the jury.

## IV.

Because Andersen's affidavit plausibly explained that her deposition testimony was premised on a typographical error concerning the date of her discovery of the defendant's alleged negligence, the district court erred in refusing to consider it. The judgment of the court of appeals is therefore reversed and the case is remanded with directions to return it to the trial court for further proceedings consistent with this opinion.