23CA2227 Matter of Swinehart 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2227
Delta County District Court No. 23PR30058
Honorable Steven L. Schultz, Judge

In the Matter of William E. Swinehart,

Kenneth Swinehart,

Appellant,

v.

William E. Swinehart and Arta Kay Denison,

Appellees.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE YUN
Harris and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

---

Kenneth Swinehart, Pro Se

Hoskin Farina & Kampf, David A. Younger, Lacie M. Lochard, Grand Junction, Colorado, for Appellee William E. Swinehart

Coleman Law Office, P.C., Cassie L. Coleman, Glenwood Springs, Colorado, for Appellee Arta Kay Denison


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Kenneth Swinehart appeals the probate court's entry of summary judgment dismissing his petition to appoint a guardian for his father, William Swinehart.[1]  He contends that the probate court erred by granting summary judgment without compelling his father to undergo a professional examination and without holding a hearing.  We disagree and therefore affirm.

## I.     Background

¶ 2     The father is an eighty-six-year-old man with two adult children, Swinehart and Arta Kay Denison.

¶ 3     Swinehart lived with his parents at their home in Canōn City during the COVID pandemic.  But in 2022, after Swinehart's mother passed away, his father moved to Cedaredge to be closer to Denison and began living on his own.  Swinehart strongly opposed the move and believed that it was bad for his father's health and well-being.

¶ 4     Swinehart filed a petition for permanent guardianship of his father in 2023.  In the petition, Swinehart asserted that his father

---

[1] William Swinehart and Kenneth Swinehart have the same last name.  To avoid confusion, in this opinion we identify William Swinehart as the father and Kenneth Swinehart by his last name.

has memory issues that "present[] significant issues when it comes to seeking healthcare and making decisions on where to live" and suggested that Denison might be manipulating him. Swinehart's petition did not include any medical records or a letter from a physician; instead, it requested that the probate court order "an evaluation of [the father's] cognitive and functional abilities."

¶ 5    Denison and her father retained separate counsel and opposed the petition for guardianship. Denison asserted that her father is fully competent, lives independently, drives himself, fully cares for himself, and is able to perform all his activities of his daily living. She further noted that her father "is of sound mind, capable of making his own decisions and acting in his own best interest."

¶ 6    The father separately filed a response to the petition that included his affidavit and a letter from his doctor. In the affidavit, the father asserted that he

- had wanted to move to Cedaredge and does not want to move away;

- "take[s] care of [him]self, which includes making meals, purchasing groceries, paying bills, scheduling doctor appointments, maintaining [his] house, driving to and

from doctor appointments, [and] driving on errands and to visit family and friends";

- has "a social life and support system in place in Cedaredge";

- drives himself to visit Denison at least once per week;

- manages his finances without assistance;

- was evaluated about a week earlier by his doctor, who confirmed that he is not incapacitated;

- does not want or need a guardian or another evaluation of his mental and physical health; and

- had last seen his son about six months earlier, does not presently communicate with him, and would prefer his daughter to be his guardian should he require one.

And the letter from the father's physician stated the following:

> [The father's] formal testing scores indicate mild to moderat[e] cognitive impairment. However, he is able to perform his activities of daily living independently. [The father] has demonstrated the ability to care for himself at this point in time. He is likely at risk of manipulation and acknowledges this. He has good insight into his memory problems. Certainly in this situation there is no black and white answer, but it appears to me he is safe making his own decisions about his care.

3

> Please refer to my encounter note . . . if more detailed information is required.

Neither the encounter note nor any other medical records were filed with the court.

¶ 7    Given the conflicting petition and responses, the probate court directed the parties to file briefs addressing (1) "whether a [c]ourt is required to hold a hearing once a guardianship petition is filed" and (2) "any legal or factual argument for or against the request for an independent evaluation" of the father.  After reviewing the parties' briefs, the court determined that nothing "prohibits a trial court from dismissing a guardianship pleading in the pre-hearing stages if that relief is appropriate under either C.R.C.P. 12 or C.R.C.P. 56." Nevertheless, the court appointed an independent visitor to investigate the claims made in the petition.  But the court denied Swinehart's request for a court-ordered evaluation because the allegations in the petition were "not sufficient to justify a court order compelling [the father] to be subjected to a professional evaluation against his wishes."

¶ 8    The court-appointed visitor visited the father's residence, and she interviewed the father, Swinehart, and Denison.  In her sworn

4

report, the visitor observed that the father "was oriented to time [and] place, . . . was able to give his date of birth, and . . . was able to speak about short-term and long-term events with ease." She determined that the father independently showers, grooms, prepares meals, grocery shops, cleans, takes medication, schedules appointments, and takes care of his dog. The visitor also reviewed the letter from the father's physician and recited it in her report. The visitor ultimately concluded that the father "is able to independently complete his daily living activities" and, under the definition of an incapacitated person, does not require a guardian.

¶ 9 After the visitor filed her report with the court, Swinehart's attorneys withdrew from the case, and Swinehart proceeded pro se. He filed a new affidavit contesting the statements made in his father's affidavit and the visitor's report, filed a motion to conduct discovery "to determine the motivations and reasons why . . . [his father] was induc[ed] to file a fraudulent affidavit," and renewed his request for an independent examination of the father. The father, on the other hand, moved for summary judgment, relying on his prior affidavit, the letter from his physician, and the visitor's report

to establish that "there is no genuine issue as to any material fact that . . . [he] is not incapacitated."

¶ 10    In a detailed order, the probate court granted summary judgment and denied each of Swinehart's pending motions. It determined that Swinehart's request for discovery was just another request for his father to undergo a compulsory examination. Noting that a compulsory examination "is extremely intrusive and is only appropriate if there is a sufficient factual basis to make it necessary," the court found that Swinehart "failed to make that necessary threshold showing." As to summary judgment, the court concluded that the father had made a sufficient showing to shift the burden to Swinehart to establish that there was a genuine issue of material fact that the father is incapacitated. And the court concluded that Swinehart's response to the summary judgment motion did not meet this burden because it was "largely based on either past events with little or no evidentiary value, such as conversations that pre-date this proceeding, or self-serving speculation as to the meaning of recent incidents" and did not "give[] rise to a credible claim that [the father] qualifies as an incapacitated person under Colorado law."

## II.    Analysis

¶ 11    Swinehart's contentions on appeal[2] can be sorted into three general categories: (1) the probate court should have ordered the father to undergo a professional evaluation and should have held an evidentiary hearing; (2) the probate court was required by statute to hold a hearing because summary judgment is impermissible in guardianship proceedings; and (3) summary judgment was not warranted because there were genuine issues of material fact.  We address and reject each contention in turn.

### A.    The Probate Court Was Not Required to Order an Evaluation or to Hold an Evidentiary Hearing

¶ 12    Swinehart first contends that the probate court reversibly erred by failing to order a professional examination of the father and by declining to hold an evidentiary hearing on Swinehart's allegations of undue influence and fraud.  We disagree.

---

[2] Because Swinehart appears pro se, "we liberally construe his filings while applying the same law and procedural rules applicable to a party represented by counsel."  *Gandy v. Williams*, 2019 COA 118, ¶ 8.  Accordingly, we seek to effectuate the substance, rather than the form, of his briefing.  *See People v. Cali*, 2020 CO 20, ¶ 34.  We will not, however, rewrite his arguments or act as an advocate on his behalf.  *See Johnson v. McGrath*, 2024 COA 5, ¶ 10.

## 1. Applicable Law and Standard of Review

¶ 13    A court can appoint a guardian for a person only if it finds by clear and convincing evidence that they are an incapacitated person. § 15-14-311(1)(a)(I), C.R.S. 2024. An incapacitated person is

> an individual other than a minor, who is unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance.

§ 15-14-102(5), C.R.S. 2024. "Clear and convincing evidence means evidence which is stronger than a mere 'preponderance'; it is evidence that is highly probable and free from serious or substantial doubt." *People In Interest of R.F.*, 2019 COA 110, ¶ 16 (quoting *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995)).

¶ 14    Probate courts enjoy wide discretion when deciding whether to appoint a guardian. *Arguello v. Balsick*, 2019 COA 20M, ¶ 13. In a guardianship proceeding, "the court *may* order a professional evaluation of" an allegedly incapacitated person but is only required

8

to do so if the allegedly incapacitated person demands one. § 15-14-306(1), C.R.S. 2024 (emphasis added). "The word 'may' denotes a grant of discretion and is usually permissive." *Cagle v. Mathers Fam. Trust*, 2013 CO 7, ¶ 31. Thus, whether to order a professional evaluation of an allegedly incapacitated person — unless requested by that person — is a decision left to the probate court's discretion. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if the court misconstrues or misapplies the law. *Arguello*, ¶ 13.

### 2. Court-Ordered Evaluation

¶ 15 The probate court rejected Swinehart's request to order a professional evaluation of his father on two occasions — once before appointing a visitor and once after receiving the visitor's report. Neither rejection constitutes an abuse of discretion.

¶ 16 Before denying Swinehart's initial request for an evaluation, the court allowed the parties to submit "any legal or factual argument for or against the request for an independent evaluation." After reviewing the parties' submissions, including the father's affidavit and a letter from his physician that both asserted that the father was not incapacitated, the court ruled that the allegations in

Swinehart's petition were "not sufficient to justify a court order compelling his father to be subjected to a professional evaluation against his wishes." At the same time, the court appointed a visitor and made it clear that the parties could "seek further relief" once the visitor filed her report.

¶ 17 While Swinehart did thereafter renew his request for a court-ordered evaluation, the visitor's report stated that a professional examiner should not be appointed to examine the father. The court noted that two professionals had already examined the father and "neither professional [had] recommended a further evaluation." Accordingly, it denied Swinehart's new request.

¶ 18 Under these circumstances, we perceive no abuse of discretion by the probate court.[3] Our supreme court has "recognized that requiring a party 'to undergo a medical examination against [his] will' is a decision that 'implicates [his] privacy interests in [his] body and [his] health.'" *People In Interest of B.B.A.M.*, 2019 CO 103, ¶ 19 (quoting *Schultz v. GEICO Cas. Co.*, 2018 CO 87, ¶ 13). Here, the

---

[3] To the extent that Swinehart contends that the probate court abused its discretion by denying his motion for discovery, we agree with the court that a compelled professional evaluation "is the only 'discovery' that [Swinehart] actually identifie[d] in his motion."

10

court balanced the father's privacy interests with the need for information and, after carefully weighing those competing interests, rejected Swinehart's initial request. And the visitor's report confirmed the court's decision that an evaluation was unnecessary, rendering the court's denial of Swinehart's second request even more reasonable.

### 3. Evidentiary Hearing

¶ 19 Swinehart argues that, under the circumstances of this case, the probate court should have held an evidentiary hearing to address his allegations that Denison was "exerting undue influence" over the father and that Denison and the father's attorney were "committing fraud upon the court." We conclude that neither category of allegations required a hearing.

¶ 20 First, Swinehart's allegations of Denison's "undue influence" are not sufficiently relevant to whether the father is incapacitated. For example, Swinehart alleges that Denison "was not acting in [the father's] best interest" when she sold the Canōn City home — which Denison owned — that the father was living in, thereby forcing him to move to Cedaredge. Similarly, he argues that "Denison manipulated her father" into undergoing a surgery that Swinehart

11

opposed. But a person can be manipulated or make a decision that is not in their best interest without being "unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that the [person] lacks the ability to satisfy essential requirements for physical health, safety, or self-care." § 15-14-102(5). These types of allegations, without more, are unclear and without sufficient detail to have more than minimal relevance to whether the father is incapacitated.[4]

¶ 21    Second, Swinehart did not present any evidence of the "fraud upon the court" that he contends Denison and the father's attorney were committing. In support of his fraud allegations, Swinehart argues that, because the father's affidavit contains false statements such as the assertion that the father is capable of caring for himself, it must have been fraudulently crafted by Denison and the father's attorney. But Swinehart does not provide any evidence that the father did not agree with the contents of his affidavit or was otherwise coerced into signing it. Nor does Swinehart present any

---

[4] For similar reasons, we reject Swinehart's argument that the probate court reversibly erred by "not[ing] that, contrary to [Swinehart's] belief, Canõn City and the Town of Cedaredge are similar with respect to their average altitude."

evidence in support of his contention that the erroneous filing of an unsigned, earlier version of the letter from the father's physician demonstrated that "[the father's] attorney (and probably Ms. Denison and her attorney) had been dictating [the physician's] medical findings and opinions." Without any such evidence, Swinehart's claims of fraud are entirely speculative and did not necessitate a hearing.

## B. Adult Guardianship Proceedings Are Subject to C.R.C.P. 56

¶ 22    Swinehart next contends that section 15-14-305, C.R.S. 2024, always requires the probate court to hold an evidentiary hearing.[5] We are not persuaded.

### 1.    Standard of Review

¶ 23    "We review the interpretation of statutes and rules of civil procedure de novo." *In re Estate of Everhart*, 2021 COA 63, ¶ 11 (quoting *Nesbitt v. Scott*, 2019 COA 154, ¶ 19). When interpreting a

---

[5] The father argues that this issue cannot be raised on appeal because the probate court's rulings on it were interlocutory and Swinehart did not request that the orders be certified as final. But "[i]f an interlocutory appeal is not taken from an order . . . , a party may still appeal the subject matter of the interlocutory order upon the entry of a final judgment. *In re Nw. Mut. Life Ins. Co.*, 703 P.2d 1314, 1317 (Colo. App. 1985); *see Prefer v. PharmNetRx, LLC*, 18 P.3d 844, 848 (Colo. App. 2000).

statute, we aim to give effect to the legislature's intent and "interpret the statute in a way that best effectuates the purpose of the legislative scheme." *Id.* (quoting *In re Estate of Morgan*, 160 P.3d 356, 358 (Colo. App. 2007)).

## 2. Discussion

¶ 24     The probate code allows "a person interested in [an] individual's welfare [to] petition for a determination of incapacity, in whole or in part, and for the appointment of a limited or unlimited guardian for the individual." § 15-14-304(1), C.R.S. 2024.  Upon receiving such a petition, the probate court "shall set a date and time for hearing the petition." § 15-14-305(1).

¶ 25     Swinehart argues that, by commanding the probate court to "set a date and time for hearing," the statute "requires the court to hold a hearing before ruling on a petition filed by an interested person."  But a division of this court has already rejected this same argument as to a substantially similar statute from a different article of the probate code.  *See Everhart*, ¶¶ 19-28.

¶ 26     Section 15-12-403(1)(a), C.R.S. 2024, provides that the probate court "shall fix a time and place of hearing" upon receiving a petition to contest a will.  Despite this language, the *Everhart*

14

division concluded that "petitions contesting a will are subject to dismissal under [C.R.C.P.] 12(b)(5)." *Everhart*, ¶ 13. The division's reasoning is summarized as follows:

(1) The statute does not address whether these petitions may be dismissed without a hearing, and the probate code states that the rules of civil procedure apply to probate proceedings "unless specifically provided otherwise or unless inconsistent with a statutory provision." *Id.* at ¶ 14 (citing § 15-10-304, C.R.S. 2024, and C.R.P.P. 5(b)). "[I]f the legislature had intended to preclude motions to dismiss in formal probate proceedings, . . . it would have said so." *Id.* at ¶ 16. "[T]he mere fact that the statute directs the court to 'fix a time and place of hearing' . . . does not mean that, in every case, a party is entitled to discovery and an evidentiary hearing." *Id.* at ¶ 17.

(2) "[T]he probate rules specifically contemplate dispositive motions practice. C.R.P.P. 24, which allows matters to be set for a hearing without appearance, explains that '[m]otions for summary judgment and motions to dismiss

15

are not appropriate for placement on a docket for hearing without appearance,' and advises that 'these motions should be filed using the procedure set forth in C.R.C.P. 121 § 1-15.'" *Id.* at ¶ 18 (quoting C.R.P.P. 24 cmt. 2).

(3) Rule 12(b)(5) "advances the purpose of the probate code" by "weeding out petitions that fail to state a plausible claim for relief and protecting parties from frivolous litigation." *Id.* at ¶ 19.

(4) Interpreting the statute to always require a hearing would lead to the absurd result of "requir[ing] the [probate] court to hold an evidentiary hearing when the petition's factual allegations, even if proved at the hearing, would not lead to invalidation of the will." *Id.* at ¶ 24.

¶ 27 Swinehart argues that *Everhart* is inapplicable because it concerned Rule 12 instead of Rule 56. But he does not explain how that distinction makes a difference. In any event, section 15-14-109(1), C.R.S. 2024, expressly provides that "the rules of civil procedure and the Colorado rules of probate procedure . . . govern" guardianship proceedings. *See Everhart,* ¶ 14. As such, "[w]e

16

cannot think of a principled reason why" Rule 12 would apply in *Everhart* but Rule 56 would not apply in this case. *Id.* at ¶ 18. Accordingly, we conclude that a petition in an adult guardianship proceeding is subject to disposition under Rule 56.

### C.   Summary Judgment Was Appropriate

¶ 28    Finally, Swinehart contends that the probate court erred by granting summary judgment in favor of his father because genuine issues of material fact exist.  We disagree.

### 1.   Applicable Law and Standard of Review

¶ 29    We review an order granting summary judgment de novo and apply the same standard as the probate court. *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 19.

¶ 30    "Summary judgment is only proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rein*, ¶ 19 (quoting C.R.C.P. 56(c)). The moving party bears the initial burden of "informing the court of the basis for his motion and identifying those portions of the record and of the affidavits, if any, which he believes demonstrate the

absence of a genuine issue of material fact." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987).

¶ 31 If the moving party clears this initial hurdle, the burden shifts to the nonmoving party to show a "triable issue of fact." *Griswold v. Nat'l Fed'n of Indep. Bus.*, 2019 CO 79, ¶ 24 (quoting *Keenan*, 731 P.2d at 713). In considering a motion for summary judgment, "a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party." *Rein*, ¶ 20. However, in responding to a properly supported motion for summary judgment, the nonmoving party may not rest on mere allegations in his pleadings but instead must provide specific facts demonstrating a genuine issue for trial. *Id.*

¶ 32 The mere existence of an alleged factual dispute is insufficient to defeat a summary judgment motion; instead, the disputed factual issue must be "genuine" and "material." *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo. 2007). A fact is material if it will affect the outcome of the case. *Gognat v. Ellsworth*, 224 P.3d 1039, 1045 (Colo. App. 2009), *aff'd*, 259 P.3d 497 (Colo. 2011). And to show that an issue is genuine, the nonmoving party must provide

sufficient evidence to demonstrate that a reasonable fact finder could return a verdict in his favor. *Andersen*, 160 P.3d at 239. "If the evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## 2.    The Father Met His Initial Summary Judgment Burden

¶ 33    We agree with the probate court that the father's summary judgment motion was "sufficient to shift the burden to [Swinehart] to establish that there is a triable issue of fact in the case."

¶ 34    The father's motion for summary judgment contended that he is not incapacitated within the meaning of section 15-14-102(5), and therefore, there was no genuine issue of material fact. In support, the father's motion included

- the father's affidavit, in which the father attested that he was fully capable of taking care of himself and his finances;

- the court-appointed visitor's sworn report concluding that the father "is able to independently complete his daily living activities" and does not need a guardian; and

- the unsworn letter from the father's physician concluding that the father has "demonstrated the ability to care for himself" and "is safe making his own decisions about his care."

This evidence was sufficient to meet the father's initial burden.

¶ 35 The letter from the father's physician was unsworn and ordinarily could not be relied upon by a court addressing a motion for summary judgment.[6] *See McDaniels v. Laub*, 186 P.3d 86, 87 (Colo. App. 2008) ("Unsworn expert witness reports are not admissible to support or oppose a motion for summary judgment."). But the visitor relied on the physician's letter — as required by statute, *see* § 15-14-305(4)(c) — in forming her opinions. A court appointed visitor is an expert, *see* § 15-14-305(1), and "experts may testify as to inadmissible facts and data, including hearsay, if that evidence formed the basis of the expert's opinion and is of the type reasonably relied on by others in the field," *People ex rel. Strodtman*, 293 P.3d 123, 130 (Colo. App. 2011). Therefore, the probate court

---

[6] On appeal, Swinehart does not argue that the physician's letter is inadmissible hearsay. Instead, he appears to rely on portions of the letter to argue that his father has some cognitive impairment and is likely at risk of manipulation.

did not err by concluding that "[a]ll three pieces of evidence, including the evaluation performed by the independent visitor, demonstrate[] that the [father] is able to safely handle his own affairs and does not require court supervision."

### 3. Swinehart Did Not Meet His Burden to Demonstrate a Triable Issue

¶ 36   Given that the father met his initial burden, Swinehart was required to establish the existence of a triable issue to defeat the motion for summary judgment. *Andersen*, 160 P.3d at 239. As the probate court noted,

> Importantly, the issue of fact that [Swinehart] must come forward with is not a disagreement over whether something did or did not happen, or how it should be characterized. Instead, [Swinehart] must present evidence showing that there is an issue of fact that the [father] is incapacitated and that he is unable to ensure his own physical health or safety.

We agree with the court that Swinehart's response fell short of this standard.

¶ 37   The admissible assertions in Swinehart's affidavit include the following:

- Starting around the fall of 2020, Swinehart drove his father and mother to "their doctor visits that were mostly

21

in Colorado Springs and Pueblo," and he and his sister made medical appointments for his father.

- In the winter of 2020, Swinehart observed the father "having difficulty remembering and paying his bills."

- In the spring of 2021, Swinehart observed that the father was becoming more forgetful. For example, the father would "forget to schedule doctor appointments," would "not remember something important in relation to a medical condition," and would sometimes misunderstand or mishear questions and give inaccurate responses.

- In both 2020 and 2021, the father "was unable to effectively file his taxes."

¶ 38    We conclude that these assertions are insufficient to establish the existence of a genuine issue of material fact. As the probate court noted, the specific events that Swinehart references all occurred at least two years before this guardianship proceeding was initiated and therefore offer "little or no evidentiary value" as to whether the father is currently incapacitated. And while some of Swinehart's observations do indicate some amount of cognitive impairment, that does not necessarily mean that the father is

22

"unable to effectively receive or evaluate information . . . to such an extent that [he] lacks the ability to satisfy essential requirements for physical health, safety, or self-care." § 15-14-102(5). Thus, while Swinehart did produce some evidence relevant to incapacity, this evidence was "merely colorable" and "not significantly probative" to stave off summary judgment. *Andersen*, 160 P.3d at 239.

¶ 39   Other statements in Swinehart's affidavit cannot be used to resist summary judgment. Rule 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence." In his affidavit, Swinehart states that "[my mother] informed me that [the father] had an incident where he got lost in Colorado Springs," that "[my mother] stated she was concerned about his driving abilities and didn't want [the father] to drive her to any future doctor visits," and that "[the father] attended a doctor's appointment and it was found he had a stroke sometime in the past." All these statements are based on inadmissible hearsay and cannot be used to defeat summary judgment. *See* C.R.C.P. 56(e); *People v. Hernandez & Assocs., Inc.*, 736 P.2d 1238, 1240 (Colo.

App. 1986) (affidavits based on inadmissible hearsay are insufficient for the purpose of summary judgment).

¶ 40　And some statements in Swinehart's affidavit are merely conclusions on ultimate issues without supporting evidence. *See Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. App. 2007) ("Mere conclusory statements are not sufficient to raise genuine factual issues."). For instance, although Swinehart says that his father "is incapacitated to manage his retirement account" and "incapacitated to fulfill [his] legal responsibilities as a trustee and understand his responsibilities under Colorado law," he does not provide any supporting medical evidence.

¶ 41　Finally, Swinehart's remaining assertions are either based on argument about how to interpret the father's evidence or based on "suspicion, surmise, speculation, rationalization, conjecture, [or] innuendo." *Litinsky v. Querard*, 683 P.2d 816, 818 (Colo. App. 1984) (alteration in original) (citation omitted). For example, Swinehart's supplemental affidavit goes through the father's affidavit and the visitor's report point by point and states Swinehart's belief on whether it is "true," "false," or "misleading." But "[a] party may not avoid summary judgment with bare

assertions concerning the truthfulness of a witness' affidavit," but instead must counter it "with evidence, not speculation concerning the credibility of the attesting witness." *Miner v. Jesse & Grace, LLC*, 2014 WY 17, ¶ 31.

¶ 42 Accordingly, we agree with the probate court that "nothing in [Swinehart's] responses gives rise to a credible claim that the [father] qualifies as an incapacitated person under Colorado law," and we therefore conclude that summary judgment was appropriate in this case.

## D. Attorney Fees

¶ 43 The father and Denison request their appellate attorney fees under section 13-17-102(2), C.R.S. 2024, on the grounds that Swinehart's appeal "lacked substantial justification." An argument lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a).

¶ 44 However, though we agree that Swinehart's assertions of widespread "fraud upon the court" were groundless, we do not view the appeal as a whole as so lacking in substantial justification that a fee award is appropriate. We therefore deny the request. *See*

*Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

## III. Disposition

¶ 45    The judgment is affirmed.

JUDGE HARRIS and JUSTICE MARTINEZ concur.