24CA0655 Grey v Alliance Alamosa 01-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0655
Colorado Civil Rights Commission CR 2022-0011

Ryan Grey and Shelby Grey,

Complainants-Appellees,

and

Colorado Civil Rights Commission,

Appellee,

v.

Alliance Alamosa, LLC and Wanda Brink,

Respondents-Appellants.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Martinez* and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

Philip J. Weiser, Attorney General, Nicholas J. Lopez, Second Assistant
Attorney General, Denver, Colorado, for Complainants-Appellees and Appellee

Justin Tucker, Sanford, Colorado, for Respondents-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Alliance Alamosa, LLC (Alliance) and Wanda Brink (collectively, appellants) appeal the final agency order issued by the Colorado Civil Rights Commission (Commission) in favor of Ryan and Shelby Grey. We reverse the order and remand for further proceedings.

## I.    Background

¶ 2    Alliance manages a residential property in Alamosa. Brink is the property manager for Alliance. Alliance and the Greys executed a lease for twelve months.

¶ 3    The Greys subsequently sought housing payment assistance from the Colorado Coalition for the Homeless (CCH). Mr. Grey contacted Brink to tell her that the Greys would be sending over some paperwork. Ms. Grey sent Brink an email stating that she had attached all the paperwork that their caseworker, Andrew Lee, had given them. CCH paperwork was attached to the email. Brink contacted Lee, who worked at La Puente Home, Inc. (La Puente), a "non-profit organization . . . providing a safety net of services where individuals and families get what they need to stabilize, heal, and ultimately thrive," to ask about the CCH paperwork. Brink did not complete the CCH paperwork.

1

¶ 4    The Greys did not pay rent in June.  Alliance, through Brink, issued a termination of lease memorandum to the Greys, which stated,

> Tenants demand property registration, with [CCH] . . . .  [F]ederal, state and local assistance is super important to struggling families, as a result of the pandemic, there is no doubt of that.  Clearly it is important to Tenant's budget and that is why they have had such difficulty dealing with payments, during this short period that they have been part of the lease with Alliance Alamosa LLC.  Therefore, it is our recommendation, Tenants (Shelby Grey and Ryan Grey and all others) find the property that can fit a housing budget, this program and or both.

¶ 5    Alliance, again through Brink, also posted an eviction notice on the door of the property the Greys were renting, terminating the lease as of August 7, 2021.  The notice further stated, "TENANTS CAN NOT [SIC] AFFORD THIS PROPERTY AND ARE ALREADY PARTICIPANTS IN A HOMELESS PROGRAM THAT THE LANDLORD IS NOT AUTHORIZED TO PARTICIPATE IN."

¶ 6    The Greys moved out of Alliance's property.

¶ 7    The Greys filed a charge of discrimination with the Colorado Civil Rights Division (CCRD), alleging that appellants committed housing discrimination.  After an investigation, the CCRD found

probable cause that appellants engaged in housing discrimination against the Greys. The Commission issued a formal complaint alleging housing discrimination based on source of income and discriminatory notice or advertising based on source of income, and it set the matter for a hearing before an administrative law judge (ALJ) pursuant to 24-34-306(4), C.R.S. 2024.[1]

¶ 8 Before the hearing, the State moved for summary judgment. The ALJ issued an order partially granting the State's summary judgment motion on liability, concluding that appellants engaged in unlawful source of income housing discrimination and published a notice that discriminated based on source of income in violation of section 24-34-502(1)(*l*) and (n), C.R.S. 2024. Specifically, for the claim that appellants denied the Greys housing based on source of income, the ALJ found that Ms. Grey emailed Brink a copy of the CCH paperwork, which included a document titled "Landlord Agreement Rental Assistance Payment" and made appellants aware that the Greys' source of income would include housing assistance.

---

[1] The Greys also brought a claim of discrimination in terms and conditions of a rental dwelling. The State voluntarily dismissed this claim after the ALJ granted summary judgment in its favor on the other claims.

In the termination memorandum, appellants stated that the Greys "failed to disclose income from this program to [Alliance] during the application process. Further [they] failed to ask if [Alliance] would be willing to participate in this program, and provide these documents at that time so that [Alliance] could make an informed up or down decision." And appellants' posted eviction notice stated, "Tenants can not [sic] afford this property and are already participants in a homeless program that the landlord is not authorized to participate in." (Emphasis omitted.) Based on this evidence, the ALJ concluded that "[t]he memo and notice give rise to an inference of unlawful discrimination based on Complainants' source of income."

¶ 9    For the claim that appellants posted a discriminatory notice based on source of income, the ALJ found that appellants published the notice on the subject property, and that the notice indicated discrimination against the Greys on the basis of their income. The ALJ found that there was no reason for appellants to include the above-quoted statement in the notice except to explain that Alliance chose to terminate the lease because of the Greys' source of income.

4

¶ 10    The ALJ then conducted a hearing to determine the amount of damages and sanctions, after which the ALJ issued an initial decision recommending that the Greys receive $10,286.50 in damages, that Alliance pay a civil penalty, and that various other sanctions against Alliance be imposed.

¶ 11    Alliance filed exceptions and appealed to the Commission, requesting that it set aside or alter the ALJ's summary judgment order. Alliance did not designate a transcript of the sanctions hearing as part of the record. In the absence of a transcript, the Commission was bound by the ALJ's findings of fact in its initial decision, and it adopted them accordingly. The Commission also found that the ALJ's conclusions of law were supported by substantial evidence in the record and a reasonable basis in law, and it adopted them. The Commission therefore adopted the ALJ's recommendation in its entirety and awarded such damages and sanctions against appellants.

¶ 12    This appeal followed.

## II.    Analysis

¶ 13    Appellants contend that the Commission erred by affirming the ALJ's entry of an order granting summary judgment on the

issues of whether they (1) engaged in unlawful source of income housing discrimination in violation of section 24-34-502(1)(*l*) and (2) published a discriminatory notice based on source of income in violation of section 24-34-502(1)(n).  We agree.

A.    Section 24-34-502(1)(*l*)

1.    Applicable Law

¶ 14    The Colorado Fair Housing Act (CFHA), sections 24-34-501 to -509, C.R.S. 2024, is a subpart of the Colorado Anti-Discrimination Act.  *See Miller v. Amos*, 2024 CO 11, ¶ 15.  The CFHA prohibits discrimination based on source of income as a type of unfair housing practice, including prohibiting "any person to refuse to rent or lease . . . or to otherwise make unavailable or deny or withhold from another person any housing for rent or lease because of a person's source of income."  § 24-34-502(1)(*l*).  "Source of income" is defined to include a lawful and verifiable source of money paid directly, indirectly, or on behalf of a person, including income from any lawful profession or occupation and income derived from any government or private assistance, grant, or loan program.  § 24-34-501(4.5).

¶ 15    As a threshold matter, the ALJ appears to have applied the burden-shifting framework for employment discrimination cases outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to the Greys' claim brought pursuant to section 24-34-502(1)(*l*). And the parties do not appear to question whether this model is the correct test.  While no published Colorado appellate case has yet adopted that test in this context, we assume, without deciding, that it is the proper test for analyzing a claim brought pursuant to section 24-34-502(1)(*l*).

¶ 16    The burden-shifting framework has three steps.

¶ 17    First, plaintiffs must establish a prima facie case of discrimination by showing (1) complainants sought housing for rent or lease or were tenants and met minimum qualifications; (2) respondents were aware of complainants' source of income; (3) respondents denied complainants housing; and (4) the circumstances give rise to an inference of unlawful discrimination based on complainants' source of income.

¶ 18    Second, if the plaintiffs establish a prima facie case, the burden of production shifts to the respondents to articulate some legitimate, nondiscriminatory reason for the denial of housing.

¶ 19     Third, if the respondents present a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiffs to demonstrate by competent evidence that the stated reasons for the decision were a pretext for discrimination.

### 2.     Standard of Review — ALJ Summarily Grants Summary Judgment

¶ 20     The parties dispute the applicable standard of review. Appellants contend that we review de novo whether they engaged in discrimination.  The Commission argues that we review its findings pursuant to section 24-4-106(7), C.R.S. 2024, and determine whether the Commission's order is supported by substantial evidence in the record and a reasonable basis in law.  We agree with appellants.

¶ 21     "When a case is set for formal hearing pursuant to [section] 24-34-306(4), . . . the hearing procedures shall be governed by the Office of Administrative Courts [(OAC)] Procedural Rules, 1 Code Colo. Reg. 104-1."  Dep't of Regul. Agencies Rule 10.7(A), 3 Code Colo. Regs. 708-1.  "If a party presents a motion for summary judgment, the presentation of the motion with supporting evidence may constitute the commencement of the hearing."  *Id.* at Rule

8

10.7(A)(6).  "To the extent practicable, and unless inconsistent with these rules, the Colorado Rules of Civil Procedure apply to matters before the OAC."  Dep't of Pers. & Admin Rule 15, 1 Code Colo. Regs. 104-1.  Because the ALJ's determination that appellants discriminated was made at the summary judgment stage, we apply the law governing C.R.C.P. 56 motions.[2]  *Cf. Campaign Integrity Watchdog v. Coloradans for a Better Future*, 2016 COA 56M, ¶ 11.  Therefore, whether the ALJ erred by granting summary judgment is a question of law that we review de novo.  *See W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo. 2002).

### 3. Summary Judgment Law

¶ 22    Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56; Andersen v. Lindenbaum, 160 P.3d 237, 239 (Colo. 2007).  The nonmoving party is entitled to the

---

[2] Neither party has argued to the contrary and both parties relied on C.R.C.P. 56 or cases relying on C.R.C.P. 56 in their summary judgment motions.

benefit of all favorable inferences that may be reasonably drawn from the undisputed facts, and all doubts as to whether an issue of fact exists must be resolved against the moving party. *St. Croix v. Univ. of Colo. Health Scis. Ctr.,* 166 P.3d 230, 235 (Colo. App. 2007).

### 4. Summary Judgment Law in Inference of Discrimination Cases

¶ 23 "A court looks to a variety of factors in evaluating a motion for summary judgment when a plaintiff is relying upon proving discriminatory intent by way of the inferential model established by *McDonnell Douglas . . . ." Id.* at 237. "These include the strength of the plaintiff's prima facie case, the probative value of the plaintiff's evidence indicating the [defendant's] explanation of the reason for dismissal is false, and any other evidence supporting the [defendant's] case that is properly considered on a summary judgment motion." *Id.*

### 5. Application

#### a. Prima Facie Case

¶ 24 Appellants contend that there was a dispute of material fact regarding the fourth requirement of establishing a prima facie case — i.e., that the circumstances give rise to an inference of unlawful

discrimination based on complainants' source of income.  We disagree.

¶ 25    Appellants asserted in the termination memorandum that the Greys needed to participate in a housing assistance program and that they did not give appellants a choice whether to participate in the program.  Similarly, the eviction notice stated that the Greys could not afford the property and were participating in a "homeless program."  The termination memorandum and eviction notice therefore give rise to an inference of unlawful discrimination.  *Cf. Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (The prima facie requirement is "not onerous.").

¶ 26    However, the ALJ essentially concluded that clearing the first hurdle — i.e., producing enough evidence to create an inference of discrimination — was sufficient for the Greys to establish the existence of discrimination.  In doing so, the ALJ failed to properly consider the second and third steps of the burden-shifting analysis.

b.    Legitimate, Nondiscriminatory Reasons

¶ 27    Next, we consider the reasons proffered by appellants for terminating the Greys' lease.

11

¶ 28    In their opposition to summary judgment, appellants stated that (1) appellants were uncertain about what the Greys wanted; (2) the Greys were not honest with appellants; (3) appellants were "kept in the dark so much they thought that the Greys might be committing fraud"; (4) Brink was given a contract from CCH with additional terms to be added to the existing lease and a contract for appellants to sign saying part of the current lease was not allowed; and (5) the termination memorandum stated the reason for rejection — appellants thought the Greys were already in a program and thought that that program would not pay enough for the property.

¶ 29    Appellants rely on the following testimony from Brink's deposition to meet their burden of production:

(1)    The Greys did not tell Brink that they would not pay rent in June.

(2)    The Greys did not tell Brink if they were trying to use a program to pay rent, and she "didn't know what the program was designed for because nobody would talk to" her.

(3) The Greys sent her documents, and she thought "those documents were to list the property with [CCH]."

(4) The Greys' "lease did not comport with what they wanted to do and how they wanted to do it. And nobody gave her any information. I mean they were toxic and they lied."

(5) CCH "is a company from Denver wanting to intervene in property management and register property and intervene in the lease. And it is not La Puente House. So this is completely out of the blue. [CCH] is not in Alamosa."

(6) "It was based on careful investigation, and they were enrolled in a program in another property[, which means] [t]hat I likely received funds in a fraudulent manner . . . ."

Appellants also rely on the statement in the termination memorandum that "[t]enants were enrolled in a program related to these documents and had a property that was already in this program."

¶ 30    Given this evidence, appellants met their burden of production by articulating specific and facially legitimate, nondiscriminatory

reasons for terminating the Greys' lease. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("By producing *evidence* (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production . . . ."); *see also Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (characterizing defendant's burden of production as an exceedingly light one).

¶ 31 Because appellants' stated reasons were sufficient to satisfy their burden of production, the burden then shifts back to the Greys to show that appellants' reasons are a pretext for discrimination. *See Brawner-Ahlstrom v. Husson*, 969 P.2d 738, 742 (Colo. App. 1998). And to be entitled to summary judgment, the Greys must demonstrate that there is no material factual dispute regarding Brink's motive.

### c. Pretext

¶ 32 The Greys submitted an affidavit from Lee, which stated that he spoke to Brink regarding the Greys' request for assistance, and Brink "stated something to the effect that she did not want people at their housing to use public assistance" and "that she did not want to participate in the program because she did not want to

14

participate with someone who was working with La Puente." Brink testified in her deposition that Lee was lying. Resolution of that dispute at the very least requires a credibility determination and, thus, a hearing. Indeed, determination of whether Brink's stated reasons were pretext for discrimination requires resolution of several such disputes. Summary judgment was therefore improper.

### B.    Section 24-34-502(1)(n)

¶ 33    Appellants also contend that the ALJ erred by granting summary judgment on the Greys' claim that appellants published a discriminatory notice based on source of income in violation of section 24-34-502(1)(n). Again, reviewing de novo, we agree.

¶ 34    It is unlawful for any person to "make, print, or publish or cause to be made, printed, or published any notice or advertisement relating to the rental or lease of any housing that indicates any limitation, specification, or discrimination based on a person's source of income." § 24-34-502(1)(n).

¶ 35    Neither party challenges how the ALJ analyzed this claim, so we assume, without deciding, that she applied the correct analytical framework.

¶ 36     The ALJ relied on her conclusion that the lease termination was unlawful pursuant to section 24-34-502(1)(*l*) to conclude that appellants violated section 24-34-502(1)(n).  Given the ALJ's reliance on a decision we conclude was erroneous, it necessarily follows that granting summary judgment on this claim was also erroneous.

## C.    Final Agency Order

¶ 37     Under the State Administrative Procedure Act, we may set aside the agency action if it is "[n]ot in accord with the procedures or procedural limitations of this article 4 or as otherwise required by law."  § 24-4-106(7)(b)(V).  Here, the final agency action essentially adopted the ALJ's procedurally erroneous grant of summary judgment.  Thus, we must set aside the Commission's order.

## III.    Unpreserved Claims

¶ 38     Appellants contend that they preserved their argument that they are protected from unreasonable searches and seizures in violation of the Fourth Amendment in their response to the Greys' motion for summary judgment and in their exceptions.  But neither pleading makes that argument.  And appellants admit that their

16

argument that the Commission's final order violated their due process rights because the ALJ's spouse worked for the Commission "is not part of the record." Accordingly, we decline to address both contentions. *See Debalco Enters., Inc. v. Indus. Claim Appeals Off.*, 32 P.3d 621, 624 (Colo. App. 2001) (arguments not raised in administrative proceedings are not preserved for appellate review).

## IV. Disposition

¶ 39    The order is reversed, and the case is remanded for further proceedings.

JUSTICE MARTINEZ and JUDGE BERNARD concur.