25CA0327 Montgomery v Best Buy 02-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0327
Jefferson County District Court No. 23CV226
Honorable Christopher C. Zenisek, Judge

William Montgomery,

Plaintiff-Appellant,

v.

Best Buy, L.P.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

William Montgomery, Pro Se

Montgomery Amutzio, Lori K. Bell, Sarah K. Vogel, Denver, Colorado, for
Defendant-Appellee

¶ 1     Plaintiff, William Montgomery, appeals the district court's order granting the motion for summary judgment (MSJ) filed by defendant, Best Buy, L.P., and denying the cross-MSJ filed by Montgomery.  He contends that the court (1) relied on inadmissible evidence; (2) improperly considered evidence appended to Best Buy's reply brief; and (3) failed to properly apply the summary judgment standard.  We reject these contentions and affirm the judgment.

## I.     Background

¶ 2     Montgomery has a long history of filing lawsuits against large retail chains, their employees, and police officers contacted by the employees.[1]  Each lawsuit is based on similar facts.  Montgomery

<hr>

[1] *See Montgomery v. Holweger*, 529 F. Supp. 3d 1212 (D. Colo. 2021) (federal district court opinion granting MSJ in favor of defendant on Montgomery's claims); *Montgomery v. Calvano*, No. 21-1134, 2022 WL 1132212 (10th Cir. Apr. 18, 2022) (federal appellate unpublished opinion affirming grant of MSJ in favor of defendant); *Montgomery v. Walmart Stores, Inc.*, (Colo. App. No. 21CA0359, May 12, 2022) (not published pursuant to C.A.R. 35(e)) (state appellate opinion affirming grant of MSJ in favor of defendants in plaintiff's district court case); *Montgomery v. Anderson*, No. 21-cv-03191, 2022 WL 3584895 (D. Colo. Aug. 22, 2022) (federal district court unpublished order granting MSJ in favor of defendant); *Montgomery v. Walmart, Inc.*, (Colo. App. No. 22CA0625, June 1, 2023) (not published pursuant to

walks into a store and behaves in a way that makes employees suspect theft — such as leaving the store with items in hand but no bag or receipt, choosing exits that are out of sight from the register he used, or entering one store with an item purchased from another location. When employees approach him to investigate, he records the interaction with a device that he brings with him. And while the employees investigate, he remains uncooperative — refusing to show a receipt until police arrive, keeping his hands in his pockets throughout the interaction, or ignoring the employees' inquiries or requests.

---

C.A.R. 35(e)) (state appellate opinion affirming grant of MSJ in favor of defendant in plaintiff's six district court cases); *Montgomery v. Cohn*, No. 22-cv-00011, 2023 WL 2366732 (D. Colo. Mar. 3, 2023) (federal district court unpublished order granting MSJ in favor of defendant); *Montgomery v. Cruz*, No. 20-cv-03189, 2023 WL 1437878 (D. Colo. Feb. 1, 2023) (federal district court unpublished report and recommendation granting MSJ in favor of defendant), *adopted in part and rejected in part*, 2023 WL 5938913 (D. Colo. Sep. 11, 2023), *aff'd*, 162 F.4th 1285 (10th Cir. 2026); *Montgomery v. Lore*, No. 21-cv-02553, 2023 WL 2423325 (D. Colo. Mar. 9, 2023) (federal district court unpublished order granting MSJ in favor of defendant); *Montgomery v. Walmart Inc.*, (Colo. App. No. 23CA0159, Oct. 26, 2023) (not published pursuant to C.A.R. 35(e)) (state appellate opinion affirming grant of MSJ in favor of defendant on plaintiff's claims in two district court cases).

¶ 3    The facts of these encounters vary slightly, but the pattern remains the same.  After these incidents, Montgomery files lawsuits that raise a combination of claims, including assault, false imprisonment, defamation, battery, negligence, malicious prosecution, and, if police were involved, claims under 42 U.S.C. § 1983 for Fourth Amendment violations.

## A.    Montgomery's Complaint

¶ 4    The present case follows this pattern.  In his complaint, Montgomery brought claims of assault, false imprisonment, and defamation per se against Best Buy for the actions of its employees. He alleged that he was standing outside a Best Buy store at 2:19 p.m. when three employees approached him, accused him of theft, and threatened and detained him for twelve minutes.  Best Buy denied these claims and invoked the shopkeeper's privilege. *See* § 18-4-407, C.R.S. 2025.[2]

---

[2]  The shopkeeper's privilege offers "protection from . . . claims based on [slander and false imprisonment] to one who[,] acting in good faith and upon probable cause based upon reasonable grounds[,] questions [a suspected shoplifter]." *J.S. Dillon & Sons Stores Co. v. Carrington*, 455 P.2d 201, 203 (Colo. 1969).

B. MSJ Filings

¶ 5    Both parties filed motions for summary judgment.  For clarity, the chart below shows the timelines for the parties' motions and related filings.



1.    Best Buy's MSJ and Related Responsive Filings

¶ 6    Best Buy argued in its MSJ that (1) Montgomery failed to establish a prima facie case for his claims of false imprisonment,

defamation per se, and assault;[3] and (2) even if he could establish a prima facie case for the former two, the employees' actions were protected by the shopkeeper's privilege.

¶ 7 Best Buy's "statement of facts" asserted that Montgomery left the store with merchandise and refused to produce his receipt when asked by employees who suspected theft. Best Buy attached exhibits, including Montgomery's pen camera footage of the incident outside the store and a YouTube video posted by Montgomery. In his YouTube video, Montgomery explains how he gets "free lawsuits" by running a "sting operation" against merchants and then withholding information, like whether he "[had] a receipt" or "was a customer," in the lawsuits he files.

¶ 8 In his response, Montgomery disagreed with Best Buy's "statement of facts," specifically "DEN[YING] that he 'exited' the store, or that he did so with any of the store's 'merchandise' in his possession." Instead, he filed an affidavit, stating as follows:

---

[3] Because Montgomery did not develop any argument addressing the court's grant of summary judgment on his assault claim in his opening brief, we do not discuss the claim further. *See In re Estate of Chavez*, 2022 COA 89M, ¶ 26 ("We don't consider undeveloped and unsupported arguments." (quoting *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12)).

- "On or about November 25[,] 2022, at approximately 2:19 p.m. I was standing outside a Best Buy store . . . waiting for my brother."

- "I had been standing . . . for about five minutes before I was approached by several Best Buy employees."

- "Prior to being approached by [the Best Buy employees], at no time whatsoever had I ever once met, seen, identify [sic], pass by [sic], or been located anywhere physically near [the employees] on that day . . . this was the very first time that I had ever become aware as to the very existence of said Best Buy employees, whatsoever, in the first place."

- "At no point in time, on [that day] had I ever once 'concealed' anything in front of (let alone not in front of) anybody, ever, period."

- "At no point in time, on that day . . . had I ever once placed into, or removed, anything from any pant pocket in front of anybody, ever, period.  Whatever was located in my pant pockets remained there before, throughout, and after my interaction with the Best Buy employees."

He also included the results of his police records request for calls originating from the Best Buy store on the day of the incident, which showed that there were "2 calls for service" in the morning.

¶ 9 Best Buy filed its reply, reiterating that Montgomery failed to establish a prima facie case for each claim and, alternatively, that the shopkeeper's privilege barred his claims of defamation and false imprisonment. Best Buy added two new exhibits to those it had already submitted. The first consisted of Montgomery's Best Buy receipts from the day of the incident, including one from the store where he was questioned with his name on it and a timestamp of 2:20 p.m. The second was an affidavit from the general manager of the store in question, stating as follows:

- He observed Montgomery "remove two boxes of JLab headphones/earbuds from the shelf, place them in his pocket and immediately leave the Best Buy Store."

- He observed "the same activity on security video."

- Montgomery declined to show his receipt when "asked by a loss prevention employee."

- He "exited the store to request Mr. Montgomery return the product from his pocket."

7

- He "walked back inside the store" once he "received confirmation that the police had been contacted."

2.      Montgomery's Cross-MSJ and Related Responsive Filings

¶ 10    Montgomery filed his cross-MSJ, arguing that (1) he established his claims, and (2) the shopkeeper's privilege did not apply since the employees lacked probable cause.  He again attached the pen camera footage and the results of his police records request, and he referenced his previously filed affidavit.  He reiterated that he was waiting outside the store at 2:19 p.m. when the employees "took [him] by surprise."

¶ 11    Best Buy filed its response, which reiterated the arguments from its own MSJ — specifically, that Montgomery could not establish a prima facie case for any claim and that the shopkeeper's privilege applied.  In support, Best Buy attached to its response the same exhibits that were attached to its reply, including the receipts and the manager's affidavit.

¶ 12    Montgomery filed a reply and an amended reply.  His arguments closely followed his previous filings and referred to the same exhibits, with two exceptions.  First, he submitted a second affidavit stating that he had authorized others to use his credit card

and opted to receive receipts by email from Best Buy. Second, he challenged the admissibility of the receipt from the store where he was questioned and the manager's affidavit, arguing that both were hearsay and that the manager's affidavit was contradicted by the record.

### 3. Summary Judgment Order

¶ 13 The district court granted Best Buy's MSJ on Montgomery's claims of false imprisonment, defamation per se, and assault, and denied Montgomery's cross-MSJ on the same claims. The court ruled that each of Montgomery's claims failed as a matter of law and, alternatively, that the shopkeeper's privilege protected Best Buy from his claims of defamation and false imprisonment.

¶ 14 As to his false imprisonment claim, the court noted that Montgomery's claim fails if he refused to use "a means of escape of which he is himself aware merely because it entails a slight inconvenience." Restatement (Second) of Torts § 36 cmt a (A.L.I. 1965). The court explained that Best Buy offered evidence that Montgomery "had a receipt from Best Buy from the date and time of the incident with his name on it, providing proof of purchase," and that Montgomery "does not deny having a receipt at the time of the

incident." Accordingly, the court concluded that "showing proof of purchase," although a slight inconvenience, "would have freed Montgomery from the false imprisonment."

¶ 15    As for his defamation per se claim, the court noted that Montgomery must prove that the Best Buy employees were at least negligent in accusing him of stealing merchandise from the store. Restatement (Second) of Torts § 580B (A.L.I. 1977). The court noted that the manager "saw [Montgomery] remove merchandise from the shelf and place it in his pocket," Montgomery provided no contrary evidence about his actions inside the store, and his YouTube video corroborated "how [he] goes to stores and acts in a manner that could reasonably be construed as suspicious." Based on this evidence, the court ruled that this claim failed because the employees were not negligent in accusing Montgomery of stealing store merchandise.

¶ 16    As to the shopkeeper's privilege, the court noted that it shields Best Buy and its employees from liability if they, acting in good faith and with probable cause, detained Montgomery to question him about theft in a reasonable manner. *See* § 18-4-407. The court concluded that the timestamped receipt proved Montgomery

was inside the store with merchandise before the incident. The court then stated that the manager's affidavit supported probable cause — Montgomery removed "two boxes of JLab headphones/earbuds from the shelf, place[d] them in his pocket and immediately [left] the Best Buy Store, which was then confirmed on the store security video," and Montgomery "refused to show his receipt upon being asked." The court noted that neither of Montgomery's affidavits contradicted the manager's affidavit since Montgomery "claim[ed] only that he had been waiting outside of the Best Buy for five minutes when he was approached." Thus, the court ruled that the shopkeeper's privilege would protect the employees' actions, "even if Plaintiff were able to make a prima facie case of false imprisonment and defamation."

### 4. Motion for Reconsideration

¶ 17 Montgomery then filed a motion for reconsideration, arguing that he was denied fair notice and an opportunity to respond to the two exhibits — the manager's affidavit and the receipts — that Best Buy submitted with (1) its reply in support of its MSJ and (2) its response to Montgomery's cross-MSJ. The court denied the motion, noting that it had considered all the briefs and exhibits related to

11

both Best Buy's MSJ and Montgomery's cross-MSJ together.  It explained that Montgomery was given an opportunity to respond to the two exhibits because he filed his reply in support of his cross-MSJ after the two exhibits were filed and did, in fact, file his second affidavit along with his reply in support of his cross-MSJ.

¶ 18 Montgomery now appeals.

## II.    Inadmissible Evidence

¶ 19 Montgomery contends that the district court relied on inadmissible hearsay evidence in granting Best Buy's MSJ and denying his cross-MSJ — namely, his receipt from the store where he was questioned and the manager's affidavit.[4]  We disagree.

### A.    Applicable Law and Standard of Review

¶ 20 In deciding whether to grant or deny a party's MSJ, the district court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. C.R.C.P. 56(c).  However, a court should not consider evidence that would be inadmissible at trial.  *St. Croix v. Univ. of Colo. Health Scis.*

---

[4] Montgomery also argues the court impermissibly relied on conclusory statements from Best Buy's MSJ to support its order. We disagree because the court cites specific exhibits supporting its conclusions.

*Ctr.*, 166 P.3d 230, 244 (Colo. App. 2007). While the form of the evidence, such as an affidavit, does not need to be admissible at trial, the "content or substance of the evidence must be admissible." *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 16 (quoting *Johnson v. Weld County*, 594 F.3d 1202, 1210 (10th Cir. 2010)).

¶ 21　　The hearsay rule generally prohibits the admission of any "statement other than one made by the declarant while testifying at the trial or hearing" that is offered "to prove the truth of the matter asserted." CRE 801(c), 802. If an out-of-court statement is not offered for its truth, then it is admissible as nonhearsay evidence as long as it is relevant. *People v. Phillips*, 2012 COA 176, ¶ 62. For example, a statement is not hearsay when the statement is offered to show its effect on the listener or to explain the listener's later actions. *Id.* at ¶ 107.

¶ 22　　If a statement is hearsay, it is inadmissible unless it falls within a statutory exception or an enumerated exception in CRE 803 or 804. *See* CRE 802. Under CRE 803(6), a court can admit into evidence records of regularly conducted activity when supported by an adequate foundational showing that (1) the document was made at or near the time of the matters recorded in

13

it; (2) the document was prepared by, or from information transmitted by, a person with knowledge of the matters recorded; (3) the person who recorded the document did so as part of a regularly conducted business activity; (4) it was the regular practice of that business activity to make such documents; and (5) the document was retained and kept in the course of a regularly conducted business activity. *People v. Flores-Lozano*, 2016 COA 149, ¶ 13.

¶ 23    Furthermore, "[e]ven if a party introduces a computer-generated record to prove the truth of its contents, that record may not constitute hearsay if the computer created the record automatically without human input or interpretation." *People v. N.T.B.*, 2019 COA 150, ¶ 22. The computer generated record is not hearsay because no "person" or "declarant" made a communicative "statement" within the meaning of CRE 801. *People v. Hamilton*, 2019 COA 101, ¶ 24.

¶ 24    We review evidentiary rulings for an abuse of discretion. *Leaf v. Beihoffer*, 2014 COA 117, ¶ 9. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Id.* However, "[e]ven when a [district]

14

court may have abused its discretion in admitting certain evidence, reversal is not required if the error was harmless under the circumstances." *People v. Summitt*, 132 P.3d 320, 327 (Colo. 2006); *see also* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

## B.    Best Buy's Receipt

¶ 25    Montgomery argues that the court could not consider the receipt when evaluating false imprisonment or the shopkeeper's privilege because it was hearsay.  He further contends that the business records exception to hearsay, CRE 803(6), cannot apply without an affidavit from a records custodian.

¶ 26    In evaluating false imprisonment, the court relied on the receipt to conclude "that showing proof of purchase would have freed Plaintiff."  The existence of the receipt was therefore not offered for the truth of the matter asserted — that is, the price and details of the purchase.  Instead, it was offered to show the effect it would have had on the listener — specifically, that the employees would have permitted Montgomery to leave the premises if presented with his receipt.  *See, e.g., People v. Tenorio*, 590 P.2d 952, 958 (Colo. 1979) (A radio report was "elicited only to establish

the officers' reasons for initially going to the park and for drawing their guns after arrival there," not "to show the truth of the contents of the radio report."); *People v. Robinson*, 226 P.3d 1145, 1152 (Colo. App. 2009) ("[T]he informant's statements — referencing the drug transaction arrangements, purportedly describing the two suppliers and giving their street names, and identifying them upon arriving at the scene — were all introduced for the nonhearsay purpose of showing" why the officers "chose to go to that particular location and stop, arrest, and search defendant and the car in which he was traveling."); *Phillips*, ¶ 108 (The witness's statement to the defendant's girlfriend "was admissible for the nonhearsay purpose of showing its effect on [the girlfriend] as a listener, in that she called defendant to notify him of the message . . . and sought his advice."). Thus, for the false imprisonment claim, we hold the receipt was admissible for the nonhearsay purpose of showing the effect on the listener.

¶ 27    However, in evaluating the shopkeeper's privilege, the court relied on the receipt's contents as true to conclude that "[Montgomery] was in Best Buy directly preceding the incident [at 2:20 p.m.] and . . . had the store's merchandise on him." As used

for this purpose, the receipt was offered for its truth, which generally is "not admissible except as provided by [the Colorado Rules of Evidence]." CRE 802. And the record does not contain an affidavit from a records custodian establishing the five-part foundational showing required for the business records exception. *See* CRE 803(6); *Flores-Lozano,* ¶ 13.

¶ 28     But even if the court abused its discretion by considering the receipt as evidence that Montgomery had been in the store and had merchandise on him, any such error was harmless for two reasons. *Summitt,* 132 P.3d at 327. First, the receipt was cumulative of other evidence establishing that Montgomery had been in the store and left with merchandise. *Curry v. Brewer*, 2025 COA 28, ¶ 57. The manager's affidavit established the same facts. Second, Best Buy offered the receipt to support its shopkeeper's privilege defense. Because the court ruled that the defamation per se and false imprisonment claims independently failed on their merits, this affirmative defense was unnecessary to resolve those claims.

¶ 29     Finally, we may affirm the district court's summary judgment on any grounds supported by the record. *Roque v. Allstate Ins. Co.,* 2012 COA 10, ¶ 7. Montgomery has failed to show that the receipt

was not generated automatically by a computer without human input or interpretation. If the receipt was computer generated, it would not constitute hearsay and it would be admissible for its truth to establish the shopkeeper's privilege defense and to disprove the false imprisonment claim. *See N.T.B.*, ¶ 22.

¶ 30 For all these reasons, the district court did not err by relying on the receipt to resolve the false imprisonment claim and the shopkeeper's privilege defense.

## C. Best Buy's Affidavit

¶ 31 Montgomery argues that the district court could not consider the manager's affidavit when evaluating defamation per se or the shopkeeper's privilege because it was hearsay. Specifically, he objects to one paragraph in the affidavit stating that Montgomery declined to show his receipt when "asked by a loss prevention employee." Insofar as Montgomery contends "the entirety of [the manager's affidavit] is *already categorically inadmissible hearsay*" because of this one paragraph, we disagree. Montgomery provides no authority suggesting that one paragraph renders the entire affidavit inadmissible.

¶ 32    Moreover, even if the court abused its discretion by mentioning this paragraph in its finding of probable cause for the shopkeeper's privilege, the error was harmless because it did not "substantially influence[]" the outcome.  *Stockdale v. Ellsworth*, 2017 CO 109, ¶ 32 (An error is harmless unless "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." (citation omitted)).  If we were to exclude this paragraph, the court's finding of probable cause is supported by other paragraphs in the affidavit, including the manager's observations of apparent theft in person and on security footage, and by the pen camera footage — in which Best Buy employees can be heard repeatedly asking for the merchandise back.

### III.    Late Evidence

¶ 33    Montgomery contends that the district court should not have considered the manager's affidavit or "the entire receipts exhibit" because they were "belatedly" submitted with Best Buy's reply in support of its MSJ.  He argues that both exhibits were late because including them with Best Buy's reply deprived him of fair notice and a meaningful opportunity to respond to the issues of "receipt

19

possession" and "shopkeeper's privilege."  We disagree for three reasons.

¶ 34     First, Montgomery did not object to or move to strike the manager's affidavit or the receipts on the basis that they were late until his motion for reconsideration — after the district court had entered summary judgment.  And we do not review arguments raised for the first time in a motion for reconsideration.  *United States v. City of Golden*, 2024 CO 43M, ¶¶ 77-78 (declining to review arguments raised for the first time in a motion for reconsideration, unless they are based on "newly discovered evidence").

¶ 35     Second, even if his objections were timely, we are not convinced that the exhibits were late.  A court may properly consider an affidavit attached to a reply in support of an MSJ if "[n]either the affidavit nor the reply brief raised a new issue as to which [the nonmoving party] was not put on notice of the need to present evidence."  *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010) (citing *Wallman v. Kelley*, 976 P.2d 330, 332 (Colo. App. 1998)).  Here, Best Buy's MSJ put Montgomery on notice that he needed to present evidence of his actions inside the

store because it raised the shopkeeper's privilege and specifically claimed that he exited the store with merchandise, refused to show a receipt, and was suspected of theft. Best Buy's reply, by including the affidavit and the receipts, did not advance a "new argument" to which Montgomery was unable to respond. Rather, these reply exhibits rebutted Montgomery's various denials — about exiting the store, having merchandise, and having a receipt. Thus, the court did not err by considering the affidavit and receipts.

¶ 36    Third, any error in considering the manager's affidavit and receipts was harmless. Both exhibits were submitted not only with Best Buy's reply in support of its MSJ but also with its response to Montgomery's cross-MSJ. As a result, Montgomery had the opportunity to respond to the affidavit and receipts when he submitted his reply in support of his cross-MSJ.[5] Because the

---

[5] Montgomery argues that the district court "erroneously and unlawfully conflated" the separate motions for summary judgment "in blatant violation of clearly established rules or law on the subject." But he cites no authority supporting this argument. Based on our review of the record, both Best Buy's MSJ and Montgomery's cross-MSJ addressed the same claims and affirmative defense and submitted substantially the same evidence for both motions. Under these circumstances, the court did not err in considering briefs and exhibits in connection with both motions together.

21

district court considered all briefs and exhibits in connection with both parties' motions together, Montgomery was not prejudiced by the "belated" affidavit and receipts. *See* C.A.R. 35(c); *Stockdale,* ¶ 32.

## IV. Summary Judgment Evidence

¶ 37 Montgomery contends that the district court disregarded conflicting evidence and failed to give him the benefit of all reasonable inferences when it granted Best Buy's MSJ and denied his cross-MSJ. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 38 We review a grant of summary judgment de novo. *Griswold v. Nat'l Fed'n of Indep. Bus.*, 2019 CO 79, ¶ 22. Summary judgment is appropriate only when the pleadings, affidavits, depositions, and admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Griswold,* ¶ 23; C.R.C.P. 56(c). In evaluating a motion for summary judgment, all doubts must be resolved against the moving party, and the nonmoving party is entitled to the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts. *Griswold,* ¶ 24.

¶ 39    The mere existence of a factual dispute is insufficient to defeat

a summary judgment motion; instead, the disputed factual issue

must be "genuine" and "material." *Andersen v. Lindenbaum*,

160 P.3d 237, 239 (Colo. 2007).  A factual issue is material if it will

affect the outcome of the case.  *Gognat v. Ellsworth*, 224 P.3d 1039,

1045 (Colo. App. 2009), *aff'd*, 259 P.3d 497 (Colo. 2011).  A factual

issue is genuine if the nonmoving party can provide sufficient

evidence to demonstrate that a reasonable fact finder could return a

verdict in his favor.  *Andersen*, 160 P.3d at 239.  "If the evidence

opposing summary judgment is merely colorable or is not

significantly probative, summary judgment may be granted."  *Id.*

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

B.    Manager's Affidavit

¶ 40    Relying on *Scott v. Harris*, 550 U.S. 372, 380 (2007),

Montgomery contends the manager's affidavit is inadmissible for

establishing material facts because it "blatantly contradicted . . .

[his] pen camera footage of the event" and the results of his police

records request.  *See also Andersen*, 160 P.3d at 240 ("[I]f the

evidence presented in opposition to summary judgment is so

23

incredible that it could not be accepted as true by a reasonable jury, it cannot serve to create a 'genuine' issue, or dispute, of fact.").

¶ 41        As an initial matter, we are unsure how the manager's statements about what he observed inside the store could contradict the pen camera footage of the subsequent incident outside the store.  Indeed, many of Montgomery's claimed "contradictions" are based on speculation.  For example, he claims the following:

- In the footage, the manager "mentions wanting to recover what Plaintiff held in his hands a whopping 31 times," which, to Montgomery, means "[the headphones/earbuds the manager observed him take] *weren't even the primary reason for the confrontation.*"

- In the footage, the manager commented that it was odd for him to "stand here and wait for us to come get [him]," which, to Montgomery, "indicates that he did not actually *FOLLOW* Plaintiff out of the store after purportedly *personally* observing him steal something from it 'immediately' prior to."

- In the footage, the employees say they saw his apparent theft "on video," but Montgomery hypothesizes the manager "*LITERALLY would have never had the time to go review any security video footage* [before the interaction]."

But Montgomery cannot manufacture a contradiction, or a "genuine issue" of material fact, simply by means of argument. *People in Interest of A.C.*, 170 P.3d 844, 846 (Colo. App. 2007) ("A genuine issue of material fact cannot be established simply by allegations in pleadings or argument; rather, the opposing party must set forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial."). Based upon our review of the record, the manager's affidavit is not "blatantly contradicted" by the pen camera footage.

¶ 42    Montgomery does raise one possible contradiction: The manager's affidavit stated that he returned inside "[o]nce [he] received confirmation that the police had been contacted," but the police records responsive to Montgomery's records request indicated that the police were called only in the morning, hours before the incident. Assuming this record is admissible, it did not create a genuine or material factual issue for purposes of the district court's

decision. The court did not mention, much less rely on, his police records request because whether the police were called was not "significantly probative" of the false imprisonment claim, the defamation claim, or the shopkeeper's privilege. *Andersen,* 160 P.3d at 239 ("If the evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." (quoting *Anderson,* 477 U.S. at 249)). Accordingly, there was no genuine issue of material fact for trial.

### C. Montgomery's Actions Inside the Store

¶ 43 Montgomery argues that the district court failed to give him the benefit of reasonable inferences when it found that he presented no evidence of his actions inside the store to counter the manager's affidavit. Specifically, he argues the court should have inferred that his affidavit described his actions inside the store — namely, that he was never "physically near" any Best Buy employees before they approached him about theft, did not "conceal" anything, and did not put anything in his pockets "in front of anybody."

¶ 44 The court did give Montgomery the benefit of all reasonable inferences. Throughout the district court proceedings, Montgomery insisted that Best Buy could not prove he entered the store. In his

briefing, he began each "statement of facts" with him standing outside the Best Buy at 2:19 p.m. He explicitly "DENIE[D] that he 'exited' the store, or that he did so with any of the store's 'merchandise' in his possession." Given Montgomery's refusal to admit he entered the store or to discuss his conduct inside the store in his briefing, the court properly found that he presented no evidence of his actions inside the store.

¶ 45    Further, Montgomery's affidavit does not give rise to reasonable inferences that would contradict the court's finding. Montgomery's affidavit states that he was waiting outside Best Buy at 2:19 p.m. for five minutes before the Best Buy employees "surprise[d]" him. He explained that this was the first time he was "anywhere physically near" them and "the very first time that [he] had ever become aware as to the very existence of said Best Buy employees." Although he states that he did not "conceal" anything or put anything in his pockets "in front of anybody," neither statement creates disputed issues of material fact. His statement that he never "concealed" anything is a "merely self-serving conclusion[] of the ultimate facts," and thus insufficient to create a genuine issue for trial. *Ginter v. Palmer & Co.*, 585 P.2d 583, 585

(Colo. 1978). And given that Montgomery said the first time he was ever "physically near" or aware of any Best Buy employee was outside the store, his statement that he never put anything in his pocket "in front of anybody" must refer to his conduct outside the store.

¶ 46 For all these reasons, we agree with the district court that it "assum[ed] the truth of [Montgomery's] evidence and [drew] every favorable inference of fact therefrom" when it found that Montgomery presented no evidence of his actions inside the store.

D. Montgomery's Police Records Request

¶ 47 Montgomery argues the district court should have inferred from the results of his police records request — which indicated that the police did not receive a call from Best Buy that afternoon — that he "*did not* commit theft inside the store." It is unclear whether this exhibit is even admissible, given that there is no affidavit or certification laying the foundation for its admission. *See St. Croix,* 166 P.3d at 244 ("Failure to authenticate a document or otherwise submit evidence establishing its admissibility precludes consideration of the document for purposes of summary judgment."). Moreover, it is unclear how this document contradicts

28

the manager's observation or how it would alter the court's resolution of the claims.  Because this argument is undeveloped, we do not consider it further.  *See People v. Cuellar*, 2023 COA 20, ¶ 44 (declining to address a pro se party's arguments that were "undeveloped" (citation omitted)).

## V.    Other Arguments

¶ 48    Montgomery raises additional arguments in his reply brief on appeal.  However, we do not consider issues raised for the first time in a reply brief.  *Colo. Korean Ass'n v. Korean Senior Ass'n of Colo.*, 151 P.3d 626, 629 (Colo. App. 2006).

## VI.    Disposition

¶ 49    The judgment is affirmed.

JUDGE GROVE and JUDGE SCHOCK concur.